FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 28, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LAWRENCE S.,[1]

                    Plaintiff,

        v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

No.    4:21-cv-5104-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Lawrence S. appeals the denial of benefits by the Administrative Law Judge (ALJ).  Because the ALJ's persuasiveness findings as to certain medical opinions are not supported by substantial evidence, the Court holds that the ALJ reversibly erred.  This matter is remanded for further proceedings.

//

/

---

[1] For privacy reasons, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

## I.    Five-Step Disability Determination

A five-step evaluation determines whether an adult claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] If the claimant is engaged in substantial gainful activity, benefits are denied.[4]  If not, the disability evaluation proceeds to step two.[5]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[6]  If the claimant does not, benefits are denied.[7]  If the claimant does, the disability evaluation proceeds to step three.[8]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[9]  If an impairment or combination of impairments

---

[2] 20 C.F.R. §416.920(a).

[3] *Id.* § 416.920(a)(4)(i).

[4] *Id.* § 416.920(b).

[5] *Id.* § 416.920(b).

[6] *Id.* § 416.920(a)(4)(ii).

[7] *Id.* § 416.920(c).

[8] *Id.* § 416.920(c).

[9] *Id.* § 416.920(a)(4)(iii).

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10]  If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[11]  If the claimant can perform past work, benefits are denied.[12]  If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

The claimant has the initial burden of establishing he is entitled to disability benefits under steps one through four.[15]  At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] 20 C.F.R. § 416.920(d).

[11] *Id.* § 416.920(a)(4)(iv).

[12] *Id.* § 416.920(a)(4)(iv).

[13] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[14] 20 C.F.R. § 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1

## II.    Factual and Procedural Summary

2

In February 2019, Plaintiff filed a Title 16 application alleging disability

3    beginning  January 1, 2019.[17]  His claim was denied initially and on

4    reconsideration.  In November 2020, ALJ Jesse K. Shumway held an

5    administrative hearing at which he received testimony from Plaintiff and a

6    vocational expert.  After the hearing, the ALJ issued a decision denying Plaintiff's

7    disability application and finding:

8    • Step one: Plaintiff had not engaged in substantial gainful activity since

9        February 25, 2019, the application date.

10   • Step two: Plaintiff had the following medically determinable severe

11       impairments: degenerative disc disease of the cervical and lumbar spine;

12       right ankle sprain, status post repair; headaches; specific learning

13       disorder with impairment in reading; mood disorder; intermittent

14       explosive disorder; attention deficit hyperactivity disorder (ADHD); and

15       panic disorder.

16   • Step three: Plaintiff did not have an impairment or combination of

17       impairments that met or medically equaled the severity of one of the

18       listed impairments.

19   • RFC: Plaintiff had the RFC perform a full range of sedentary work,

20       subject to the following additional limitations:

21

_____

22   [17] AR 234.

23

- o  he can only occasionally operate foot controls with the right lower extremity;

- o  he can never climb ladders, ropes, or scaffolds;

- o  he can never crouch or crawl;

- o  he can occasionally perform all other postural activities;

- o  he can occasionally reach overhead;

- o  he can have no exposure to hazards (e.g., unprotected heights and moving mechanical parts);

- o  he can have no more than occasional exposure to extreme cold and vibration;

- o  he is limited to simple, routine tasks;

- o  he can have only occasional, superficial contact with the public, supervisors, and coworkers; and

- o  he requires a routine, predictable work environment with no more than occasional changes.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: Considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as "Document Preparer," "Polisher, Eyeglass Frames," and "Table Worker." As an alternative finding, the ALJ further found that Plaintiff could still perform these jobs even if further limited "working in a moderate noise environment; needed the option to wear eye

protection if exposed to bright lights; and was likely to miss one day of work per month)."[18]

In reaching his decision, the ALJ found:

- Largely persuasive the October 2019 reviewing opinions of State agency medical consultant Guillermo Rubio, MD, and Norman Staley, MD.[19]

- Generally persuasive the October 2019 reviewing opinions of State agency psychological consultants Vincent Gollogly, PhD, and Kent Reade, PhD.[20]

- Somewhat persuasive the October 2018 opinions of treating physician Brent Thielges, DPM.[21]

- Somewhat persuasive the September 2019 opinions provided in a consultative psychological evaluation by Ioly Lewis, ARNP.[22]

- Not persuasive the August 2020 opinions provided on a medical report form by treating physician Ralph Laraiso, DO.[23]

---

[18] AR 29.

[19] AR 25.

[20] AR 25–26.

[21] AR 26.

[22] AR 26–27.

[23] AR 27.

- Not persuasive the August 2020 opinions provided on a medical report form by Angela Hamela, ARNP, PMHNP.[24]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[25]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[26]  Plaintiff then appealed to this Court.

## III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[27] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[28]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

---

[24] AR 27.

[25] AR 21.

[26] AR 1.

[27] 42 U.S.C. § 405(g).

[28] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

mind might accept as adequate to support a conclusion."[29]  Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[30]  The Court considers the entire record.[31]

Further, the Court may not reverse an ALJ decision due to a harmless error.[32]  An error is harmless "where it is inconsequential to the ultimate nondisability determination."[33]

///

//

/

---

[29] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[30] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[31] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[32] *Molina*, 674 F.3d at 1111.

[33] *Id.* at 1115 (cleaned up).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1

2

### IV.    Analysis

3

Plaintiff argues that the ALJ erred by (1) not properly assessing certain

4

medical opinions, (2) improperly discounting Plaintiff's symptom testimony, and

5

(3) failing to properly assess Plaintiff's hand disorders.[34]  For the reasons that

6

follow, the Court holds that the ALJ reversibly erred by failing to properly

7

articulate its consideration of the medical-opinion evidence, and this matter is

8

therefore remanded for further proceedings.

9

**A.    Medical Opinions: Plaintiff establishes consequential error.**

10

Plaintiff challenges the ALJ's assessment of the medical opinions provided

11

by Dr. Laraiso, ARNP Hamel, and ARNP Lewis.[35]

12

1.    <u>Standard for Medical-Opinion Analysis</u>[36]

13

An ALJ must consider and evaluate the persuasiveness of all medical

14

opinions or prior administrative medical findings.[37]  The factors for evaluating the

15

16

[34] *See generally*, ECF No. 12.

17

[35] ECF No. 12 at 18–21.

18

[36] For claims filed on or after March 27, 2017, such as Plaintiff's claims, new

19

regulations apply that change the framework for how an ALJ must evaluate

20

medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical

21

Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R.

22

§ 416.920c.

23

[37] 20 C.F.R. § 416.920c(a), (b).

persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[38]  Supportability and consistency are the most important factors, and the ALJ is required to explain how both of these factors were considered.[39]

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[40]

Typically, the ALJ may, but is not required to, explain how the other factors were considered.[41]

---

[38] 20 C.F.R. § 416.920c(c)(1)–(5).

[39] *Id.* § 416.920c(b)(2).

[40] *Id.* § 416.920c(c)(1)–(2).

[41] *Id.* § 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. *Id.* § 416.920c(b)(3).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

1

2.    <u>Dr. Laraiso: The ALJ failed to address the consistency factor.</u>

2

In finding Dr. Laraiso's August 2020 medical report not persuasive, the ALJ

3

gave the following summary and analysis:

4

> In this form, Dr. Laraiso opined that the claimant would have to lie
> down during the day; that the claimant was most likely at risk for
> further injury with work on a regular and continuing basis; and that
> the claimant would miss three days of work on average per month
> because of his medical impairments.  Dr. Laraiso's opinion was given
> in a check-box form and was not well supported with any meaningful
> explanation.  For example, he provided no explanation for why the
> claimant would have to lie down during the day and did not specify
> how long he would need to lie down (therefore it is not even clear
> whether he felt the claimant's need to lie down would exceed normal
> breaks).  He provided no explanation for why the claimant would miss
> three days of work per month.  Overall, his opinion is conclusory and
> vague and not probative as opinion evidence.  Moreover, his opinion
> that the claimant would miss three days of work per month,
> particularly with no explanation in support, is appropriately
> understood as an opinion that the claimant cannot work at times,
> which opines on an issue that is reserved to the Commissioner.
> Therefore, this aspect of his opinion is inherently neither valuable nor
> persuasive.[42]

14

a.    <u>*The ALJ's Errors as to Dr. Laraiso's Opinions*</u>

15

Some of the ALJ's analysis includes valid considerations that, if supported

16

by substantial evidence in the record, could reasonably support his finding that

17

Dr. Laraiso's medical opinions were unpersuasive.  For instance, although

18

Dr. Laraiso's entries in the medical-report form make clear that the limitations

19

opined therein stem from Plaintiff's chronic low-back pain (potentially in

20

conjunction with noted medication side effects)—all of which appear consistent

21

22

[42] AR 27 (cleaned up) (citing AR 1079–80).

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

with Dr. Laraiso's treatment notes[43]—the ALJ is nonetheless correct that Dr. Laraiso failed to articulate how long or how frequently Plaintiff would need to lie down.[44]   However, as Plaintiff points out, "the ALJ did not give any articulation as to the consistency of [Dr. Laraiso's] medical opinion[s] with other opinions and evidence in the record."[45]

"Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."[46]   The new regulations still

---

[43] *See* AR 1080–81; *see also, e.g.*, AR 1082–91 (08/04/2020: "Diagnoses of Chronic low back pain without sciatica, unspecified back pain laterall[y], Spinal stenosis of lumbar region, unspecified whether neurogenic claudication present, Encounter for long-term use of opiate analgesic, Cervical radicular pain, Neck pain, Occipital neuralgia, unspecified laterality, Paresthesias, Lumbar facet arthropathy, Facet arthritis of cervical region, and DOD (degenerative disc disease), cervical were pertinent to this visit.").

[44] "While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (cleaned up).

[45] ECF No. 12 at 19.

[46] *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

require the ALJ to consider the consistency of a medical opinion with evidence from other medical sources.[47]  For this reason, the Court finds the ALJ's analysis of consistency regarding Dr. Laraiso's opinions fails to comply with the new regulations.

Additionally, the Court notes that an ALJ may discount an opinion due to vagueness if the opinion is not supported, but if the opinion is supported by examination findings, then the ALJ has a duty to develop the record to clarify any consequential ambiguities either contained in or caused by the opinion before discounting it for vagueness.[48]  Moreover, Plaintiff's likely rate of absenteeism and need to lie down are not issues reserved for the Commissioner "but instead an assessment, based on objective medical evidence, of [Plaintiff]'s likelihood of being able to sustain full time employment given the many medical and mental impairments [Plaintiff] faces."[49]

---

[47] *See* 20 C.F.R. § 416.920c(b)(2), (c)(2).

[48] *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [the physician]'s opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.").

[49] *See Hill*, 698 F.3d at 1160; *see also* 20 C.F.R. § 416.913(a)(2) (A "medical opinion" includes any statement regarding whether the claimant has one or more impairment-related limitations in the ability to perform the demands of work

b.    _Conclusion as to Dr. Laraiso_

Because the ALJ failed to conduct the mandated analysis as to the persuasiveness of Dr. Laraiso's opinions, the ALJ's finding is not supported by substantial evidence.  Had Dr. Laraiso's opinions been fully incorporated into the assessed RFC, the vocational expert's testimony establishes Plaintiff would have necessarily been found disabled.[50]  Further proceedings are required for the ALJ to reevaluate Dr. Laraiso's opinions and to expressly conduct the consistency analysis as required by the applicable regulations.

3.    ARNP Hamel: The ALJ's consistency finding lacks substantial supporting evidence.

In finding ARNP Hamel's August 2020 opinions not persuasive, the ALJ gave the following summary and analysis:

> This provider's assessments (of mostly "markedly" or "severely" limited mental abilities and substantial time off task and days of work missed per month) are not well supported or consistent with the record as a whole.  Ms. Hamel's opinion was provided in checkbox form with no explanation in support.  Moreover, her opinion is notably inconsistent with the record as a whole, which, as noted above,

---

activities.); _id._ § 416.913(a)(3) ("[O]ther medical evidence" includes prognoses and "judgments about the nature and severity of [the claimant's] impairments.").

[50] _See_ AR 103 (testifying that an absence rate higher than one day per month would preclude competitive employment).

reflects little mental health treatment and typically only mild reports of anxiety and depression in PHQ-9 and GAD-7 instruments.[51]

  a.  *The ALJ's Errors as to ARNP Hamel's Opinions*

Again, an ALJ may validly reject a medical opinion based on a lack of support and inconsistency with other evidence.[52]  However, the sparse consistency analysis provided in the ALJ's decision is unsupported by substantial evidence. The only inconsistency noted by the ALJ between ARNP Hamel's opinions and other evidence was that the record supposedly "reflects little mental health treatment and typically only mild reports of anxiety and depression in PHQ-9 and GAD-7 instruments."[53]  In support of this assertion, the ALJ primarily cited to several relatively recent instances in which Plaintiff's PHQ-9 and GAD-7 results were recorded as being mild to moderate.

When viewed as a whole, however, the record shows that from about March 2018 through October 2019, Plaintiff's scores on the PHQ-9 depression scale generally hovered around 16 (moderately severe) with a few spikes ranging from 20

---

[51] AR 27 (citing AR 1237–38 (02/04/2020), 1248–49 (03/04/2020), 1265 (05/05/2020), 1282 (06/08/2020), 1294 (07/02/2020)).

[52] *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

[53] AR 27.

to 23 (severe).[54]  During that same period, Plaintiff's scores on the GAD-7 anxiety scale had more variability, but were generally around a 13 (moderate) with several spikes from 16 to 19 (severe).[55]  At the end of November 2019, Plaintiff scored 13 (moderate) on both scales.[56]  Then, from January 2020 through about August 2020, Plaintiff had a series of low scores on both scales: 8 or below on the PHQ-9, and 9 or below on the CAD-7.[57]

When an ALJ relies upon example medical records to discount other evidence, the records selected "must in fact constitute examples of a broader development."[58]  Here, after more than a year and a half of moderate and severe PHQ-9 and GAD-7 results, the record shows mild results during only the last 7–8 months.  For much of that time, Plaintiff was receiving treatment for depression, anxiety, anger, and sleep issues.[59]  And, aside from potential improvement

---

[54] *See* AR 619–622, 625, 643–647, 667, 705–09, 875–77, 965–69, 1006–07, 1098–1103.

[55] *See id.*

[56] AR 1005–09.

[57] *See* AR 1082–91, 1227, 1235–43, 1245–52, 1261–68, 1279–86, 1290–98.

[58] *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014)

[59] *See, e.g.*, AR 619–622, 643–47, 667, 705–09, 875–77, 965–969, 986–990, 1005–1009, 1098–1103 (collectively, treatment notes ranging from March 2018 through January 2020).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

resulting from treatment, it is commonly understood that the symptoms of depressive and anxiety disorders may often wax and wane.[60]

Yet, the ALJ discussed neither the possibility of improvement or waxing/waning symptoms and instead inaccurately pointed to Plaintiff's latest and lowest PHQ-9 and GAD-7 results as being "typical."  Without at least an explanation as to why these latest exam results should carry more weight than all the others—and why they do not reflect the waxing and waning common to such mental impairments—the Court cannot find that substantial evidence supports the ALJ's findings and inferences drawn from Plaintiff's PHQ-9 and GAD-7 scores.[61]

### b.     _Conclusion as to ARNP Hamel's Opinions_

Given Plaintiff's longitudinal treatment history, and the lack of a meaningful explanation by the ALJ as to why the cited medical records warranted greater weight than those omitted, the ALJ's consistency analysis as to ARNP Hamel's opinions is not supported by substantial evidence.  Further proceedings are required for the ALJ to reevaluate ARNP Hamel's opinions.

---

[60] _See Garrison_, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence. . . .").

[61] _Embrey v. Bowen_, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

4.      <u>ARNP Lewis: The ALJ erred in his analysis of the consistency factor.</u>

The ALJ found "somewhat persuasive" the opinions contained in ARNP

Lewis's September 2019 psychological evaluation of Plaintiff.[62]  The ALJ, in

relevant part, gave the following summary and analysis:

> She assessed his ability to interact with coworkers, superiors, and the
> public and his ability to adapt to the usual stresses encountered in the
> workplace as "poor" based on his interpersonal presentation. . . .
> However, the record as a whole indicates the claimant has been no
> more than moderately limited in any functional domain (to the extent
> Ms. Lewis's assessment of "fair" abilities might indicate greater than
> moderate limitations), given his typically unremarkable mental
> presentation and his repeated PHQ-9 and GAD-7 scores indicating
> only mild levels of depression and anxiety.  With respect to her
> assessment of "poor" abilities in interaction and adapting to stress,
> this is not consistent with the record as a whole.  This was based on
> the claimant's interpersonal presentation at that time.  It is noted
> that the claimant presented as very irritable with fidgety psychomotor
> behavior.  However, throughout the record the claimant has typically
> presented as pleasant and/or cooperative, indicating that Ms. Lewis's
> one-time findings do not support her assessment of poor abilities.[63]

a.      <u>*The ALJ's Errors as to ARNP Lewis Opinions*</u>

As a preliminary matter, as discussed above, the ALJ's assessment of

Plaintiff's PHQ-9 and GAD-7 scores is unsupported by substantial evidence.

Further, at the point when ARNP Lewis conducted her psychological evaluation in

September 2019, Plaintiff's scores in both categories had been consistently in the

moderate-to-severe range.  Moreover, the ALJ did not explain why—even if those

---

[62] AR 26–27; *see* 785–90.

[63] AR 26–27 (cleaned up).

scores had indicated "only mild levels of depression and anxiety"—they would undermine ARNP Lewis's opinions as to Plaintiff's irritability, his ability to adapt to the usual stresses encountered in the workplace, or how he would be able to interact with coworkers, supervisors, and/or the public.[64]

Because the Court is already remanding this case for further proceedings, it need not determine whether substantial evidence supports the ALJ's assertion that "throughout the record the claimant has typically presented as pleasant and/or cooperative," nor whether this amounts to a rational reason to discount ARNP Lewis's opinions.[65] The Court notes, however, that Plaintiff consistently reported to his treatment providers problems with anger and irritability.[66] Also, the record contains numerous references to Plaintiff presenting as irritated, anxious, depressed, distracted, and/or poorly groomed. Indeed, several such references are found in the very records the ALJ cites to suggest that Plaintiff tends to be pleasant or cooperative.[67] And many of the other records cited by the

---

[64] *See* AR 785–90.

[65] AR 27.

[66] *See, e.g.*, AR 705–709, 785–90, 875–877, 965–69, 986–990.

[67] *See, e.g.*, AR 619–22 (05/14/2019: appearing "cooperative, disheveled, good eye contact, tense, guarded"; mood was "anxious, irritable, dysphoric" with congruent affect); AR 974–77 (08/15/2019: "Pleasant"; "Psychiatric/Behavioral: Positive for agitation, confusion and decreased concentration. . . . The patient is

ALJ were written by treatment providers seeing Plaintiff for issues unrelated to mental health.[68]

### b.   Conclusion as to ARNP Lewis's Opinions

The ALJ erred in his analysis of ARNP Lewis's opinions.  On remand, the ALJ shall reassess ARNP Lewis's opinions, specifically explaining how the supportability and consistency factors affect persuasiveness.

## B.   Step Two: Reevaluation is warranted.

Plaintiff further argues that the ALJ did not properly assess his carpal tunnel syndrome and ulnar neuropathy.  Because the Court is already remanding for reevaluation of the medical opinions which, in turn, will require reevaluation of the rest of the medical evidence, the Court finds a reevaluation of Plaintiff's severe medically determinable impairments is also warranted.  As such, the Court need not specifically address this argument by Plaintiff.

---

nervous/anxious."); AR 1005–09 (11/26/2019: appearing "distracted with his phone during most of the conversation . . . slightly irritated but is cooperative, grooming is poor"; mood observed as "[l]ess angry but still irritable" with congruent affect).

[68] See Orn, 495 F.3d at 634 (explaining that medical records must be read in their treatment context*); see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that claimant performed cognitively well during examination and had a generally pleasant demeanor).

1
2
3
4
5
6

"At the second step of sequential evaluation … medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities."[69]  On remand, therefore, the Court encourages the ALJ to specifically address the medical evidence of record pertaining to Plaintiff's carpal tunnel syndrome in his left hand, with symptoms appearing to date back to April 2019.[70]

7

**C.  Plaintiff's Symptom Reports: Reevaluation is warranted.**

8
9
10
11
12
13

Plaintiff argues the ALJ failed to provide valid reasons for discounting his symptom reports.  Because the ALJ's weighing of the medical evidence impacted his weighing of Plaintiff's symptom reports, the Court need not analyze this claim of error.  Still, as discussed above, without additional explanation, Plaintiff's PHQ-9 and CAD-7 scores do not amount to substantial evidence supporting the rejection of Plaintiff's mental-impairment symptom reports.

14
15

On remand, if the ALJ discounts Plaintiff's symptom testimony, the ALJ must be specific about which testimony is being rejected and cite to specific

16

17

_____

18

[69] SSR 85-28 at *4; *see* 20 C.F.R. § 416.921.

19
20
21
22
23

[70] *See, e.g.*, AR 1271 ("Conduction studies demonstrate median nerve conduction block at the wrist which is moderate to severe on the right and moderate on the left."); AR 628–31 (04/19/2019: "He reports numbness and tingling in all 10 digits of both hands . . . ."). *Cf. also* AR 1312–13 (08/11/2020: showing carpal-tunnel release surgery on Plaintiff's right wrist only).

evidence to explain why each symptom is being rejected.  The ALJ's reasons for rejecting the symptom testimony must be clear and convincing.  Also, to provide further guidance on remand, the Court briefly notes that: (1) chronic pain frequently affects mental disorders,[71] and providers have indicated this may be true for Plaintiff;[72] (2) although the tendency to exaggerate may be a valid reason to discount symptom testimony,[73] pain reports on a 1–10 scale are inherently subjective and of limited value when assessing a claimant's credibility;[74] (3) ALJs

---

[71] *See Lester v. Chater*, 81 F.3d 821, 829–30 (9th Cir. 1996) (noting that, for claimant with chronic pain syndrome and affective disorder, the consequences of the physical and mental impairments were inextricably linked and the Commissioner "erred as a matter of law in isolating the effects of [the claimant's] physical impairment from the effects of his mental impairment").

[72] AR 700 (05/02/2018: noting, "Chronic pain likely contributing" to depression with anxiety).

[73] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

[74] *See Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (warning against relying too heavily on pain-scale reports, noting that a claimant's ranking "is of only marginal assistance to a decisionmaker whose own subjective one-to-ten scale may differ significantly"); *see also Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) ("Claimant periodically advised [his] doctors when [he] was feeling somewhat

are required to address evidence of medication side effects,[75] and the record includes several indications of significant side effects and even suggests that Plaintiff's headaches may be caused, at least in part, by his prescribed medications;[76] and (4) as to his headaches, Plaintiff described two distinct kinds of headaches/migraines, and he explained that his doctors would not continue with the migraine treatments because they were ineffective.[77]

## D.    Conclusion: Remand is required.

The ALJ's errors discussed above require reversal.  Remand for further proceedings is necessary because Plaintiff's disability is not clearly established by

---

better.  This is unlikely behavior for a person intent on overstating the severity of [his] ailments.").

[75] *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2016 WL 1119029, at *7.

[76] *See, e.g.*, AR 987, 979.

[77] *See* AR 91–92.  Absent more, it is unclear why Plaintiff should be faulted for the fact that his doctors did not discuss with him the three specific medications that the ALJ thought might help his migraines. *See id.*; AR 23 (stating that "claimant admitted at the hearing that he has sought no treatment for migraines in approximately one year, and that he has not discussed advanced treatments with his doctor (e.g., AJOVY, Aimovig, Emgality)").

the current record.[78]  On remand, the ALJ shall conduct anew the disability

evaluation, beginning at step two.

 With respect to the medical-opinion evidence, as to each medical source, the

ALJ must meaningfully articulate the supportability and consistency of the

source's medical opinions.  The ALJ shall further develop the record if he deems it

necessary.  To this end, the Court encourages the ALJ to receive testimony from

one or more medical expert qualified to address those of Plaintiff's claimed

impairments which are supported by at least some objective medical evidence,

specifically including but not limited to Plaintiff's chronic pain, mental disorders

(and the likely impact of chronic pain on the same), hand disorders/carpal tunnel

syndrome, and migraines/headaches.[79]

 If the ALJ again discounts Plaintiff's symptom reports on remand, the ALJ

must articulate clear and convincing reasons for doing so.[80]  General findings are

insufficient because the Court cannot affirm discounting Plaintiff's symptoms for a

reason not articulated by the ALJ.[81]  The ALJ must identify what symptoms are

---

[78] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison*, 759 F.3d at

1020.

[79] ALJs are not empowered to render medical opinions by independently assessing

clinical findings. *See Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999).

[80] *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036).

[81] *See Garrison*, 759 F.3d at 1010.

being discounted and what evidence undermines these symptoms.[82]  When assessing Plaintiff's mental health symptoms, the ALJ is encouraged to give more weight to the mental health findings made during mental health examinations or treatment sessions, rather than during appointments for solely physical conditions.[83]

<strong>V.    Conclusion</strong>

Accordingly, IT IS HEREBY ORDERED:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3.    The Court **REVERSES** the decision of the ALJ and **REMANDS** this matter to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

//

/

---

[82] *See Garrison*, 759 F.3d at 1010 (quoting *Lester*, 81 F.3d at 834, and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[83] *See* AR 364–65. *See Ford* 950 F.3d at 1156 (comparing psychologist's mental health findings against findings from other mental health professionals).

4.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff.

5.    The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 28th  day of September 2022.


_s/Edward F. Shea_
EDWARD F. SHEA
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 26